T.C. Memo. 2012-141

UNITED STATES TAX COURT

BILAL SALAHUDDIN AND MONIQUE SALAHUDDIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7050-11L.                         Filed May 17, 2012.

Ps owed outstanding Federal income tax liabilities for tax years
2004, 2005, and 2006. R issued to Ps a levy notice to collect those
unpaid liabilities. Ps requested a collection due process (CDP)
hearing before IRS Appeals pursuant to I.R.C. sec. 6330, during
which they sought an installment agreement. Ps submitted a Form
433-A, Collection Information Statement for Wage Earners and Self-
Employed Individuals, without supporting documentation. An
Appeals team manager informed Ps that R's Philadelphia Service
Center had calculated Ps' acceptable amount for an installment
agreement to be $900 to $1,000 monthly and advised Ps that their
prior submission would be "sufficient". Without further
communication with Ps, the Appeals settlement officer closed the
CDP hearing and sustained the proposed levy on the ground that Ps
had not provided sufficient financial information and Ps' ability to pay
exceeded the proposed $900 to $1,000 per month. Ps filed a

timely petition for review of that determination with this Court, and R moved for summary judgment.

Held: There is a genuine issue of material fact as to whether Appeals, having advised Ps that their submission was "sufficient", abused its discretion in terminating the CDP hearing and rejecting Ps' proposal for an installment agreement, rather than soliciting a satisfactory substitute proposal. R's motion for summary judgment will be denied.

Bilal Salahuddin and Monique Salahuddin, for themselves.

Melissa Ellen Avrutine, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge: This is a collection due process ("CDP") appeal pursuant to section 6330(d),[1] in which petitioners Bilal and Monique Salahuddin ask this Court to review the determination by the Office of Appeals ("Appeals") of the Internal Revenue Service ("IRS") to deny the Salahuddins' request for a collection alternative and to proceed with a levy to collect their unpaid Federal income tax for tax years 2004, 2005, and 2006. The issue is whether Appeals

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C., and referred to herein as "the Code"), and all Rule references are to the Tax Court Rules of Practice and Procedure.

abused its discretion in making that determination. Respondent, the Commissioner of the IRS, moved for summary judgment pursuant to Rule 121, and the Salahuddins filed an opposition. We hold that there is a genuine issue of material fact as to whether Appeals abused its discretion in rejecting their request for an installment agreement and determining to proceed with the proposed levy. We will therefore deny the Commissioner's motion.

Background

The Commissioner's motion establishes the following facts, which the Salahuddins did not dispute.

Events before the CDP process

The Salahuddins filed tax returns reporting income tax liabilities for the years 2004, 2005, and 2006; but they did not pay those liabilities. On March 12, 2010, the IRS sent the Salahuddins a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing," advising them that the IRS intended to levy to collect those unpaid tax liabilities, and advising that they could receive a hearing with Appeals. On April 6, 2010, the Salahuddins timely filed a Form 12153, "Request for a Collection Due Process or Equivalent Hearing".[2]

---

[2]The Salahuddins' request for a CDP hearing indicated that they desired an offer-in-compromise ("OIC") as a collection alternative. However, they later

(continued...)

In July 2010, before their CDP hearing was scheduled (and in circumstances not clear in our record), the Salahuddins submitted to the Automated Collection System Support unit of the IRS a Form 433-A, "Collection Information Statement for Wage Earners and Self-Employed Individuals", stating their income, expenses, assets, and liabilities. The Salahuddins failed to provide the accompanying financial documents called for by the instructions, but the form showed that their monthly living expenses were $11,737 and that their monthly income was $17,568 (i.e., a surplus of over $5,800).

Dealings with IRS Appeals

On September 26, 2010, an Appeals settlement officer ("SO") mailed the Salahuddins a letter, offering a telephone CDP hearing on October 19, 2010. The SO's letter requested that, by October 14, 2010, the Salahuddins provide the SO with: (1) a completed Form 433-A, along with proof of income and expenses for the past three months, and (2) a Form 656, "Offer in Compromise" and the $150 application fee. (The Salahuddins never submitted a Form 656. See note 2 above.)

---

[2](...continued)
effectively retracted this proposal in favor of a request for an installment agreement. Since the Salahuddins do not contend that Appeals abused its discretion in denying them an OIC, we do not address the Commissioner's arguments in defense of that denial.

On October 13, 2010, the Salahuddins sent the SO a letter requesting additional time to gather the information and requesting that the hearing be conducted through correspondence. By letter dated October 19, 2010, the SO gave the Salahuddins until November 2, 2010, to provide any additional information for Appeals to consider during the hearing. On October 26, 2010--i.e., before the November 2 deadline--Mrs. Salahuddin telephoned Appeals and spoke with the SO's supervisor, an Appeals team manager ("ATM"). In the case activity record, the ATM described the call as follows:

> ATM received call from Mrs TP [i.e., taxpayer] requesting answers to specific questions. I pulled the case file and talked with SO. After reviewing the TPs letter I returned her call and advised her that the information in the case file was sufficient and that we would continue based on the 433A and their figures which show disposable income and assets for an I/A [installment agreement]. The tp will keep the co[r]respondence hearing date of 11-2. She will also send her requ[es]t by fax.

On October 31, 2010, the Salahuddins sent the SO a letter that similarly described the call as follows:

> [The ATM] was kind enough to provide a brief review of my case and clarify that the 433 form we submitted in July 2010 would be sufficient. He also indicated that no further documentation would be needed in support of said form. Additionally, [the ATM] said that we would not be eligible for and [sic] Offer in Compromise. It was conveyed that the office in Philadelphia, Pennsylvania, determined that we could pay approximately $900 to $1,000 monthly.

> I would like to request that all payments made by us be applied to the most recent tax year first. That being 2006, 2005, and 2004, in this order. Also, please confirm the order of how payments are posted ... i.e.--principle [sic], penalties then interest.

The SO never responded to this letter by telephone or in writing. For purposes of the Commissioner's motion for summary judgment, and entertaining all reasonable inferences in favor of the non-movants (i.e., the Salahuddins) pursuant to Rule 121, we assume that in that telephone conversation, the Salahuddins were informed (or reasonably believed that they were informed) that the information they had already submitted was "sufficient" to justify an installment agreement under which they would pay "approximately $900 to $1,000 monthly". The record does not show that anyone in Appeals ever asked the Salahuddins to submit a formal proposal for an installment agreement.

The SO's deliberations

After three and a half months, the SO came to a conclusion that she described as follows in her case activity record on an entry dated February 17, 2011:

> [I]t appears TP may want an IA in the amount of $900-$1000 monthly per this same letter [of October 31, 2010].

> S/O reviewed and analyzed the CIS to determine the taxpayer's ability to pay. Tp's monthly income is $17567.88 per Form 433A. TP has not provided any supporting documentation. Tp's monthly actual expenses were $11736.85

per F433A.  Tp's monthly allowable expenses were $9,345. Tp does have the ability to full pay by income. * * *

Tp currently owes $54,894.17.  Tp can full pay this liability within 7 months using their monthly disposable income.

Net Equity in assets is $68,217 per AET [asset equity table on the Form 433-A]. * * * <u>No supporting documentation was provided</u> by the taxpayer to determined if these amounts are accurate.

Based on financial analysis, the taxpayer has the ability to full pay their liability by liquidating their assets or monthly payments within 7 months. Therefore, S/O will recommend rejection of IA per review of information in the case file as it appears TP has the ability to pay more than their proposed amount and <u>without supporting documen[t]ation</u>, full payment is the only alterative that could be considered.

Determination is to sustain the proposed levy action.  Although, TP indicated PSC [Philadelphia Service Center] convey[ed] that they could pay $980 per five year rule.[3]  TP did not propose an amount.  No collection alternative could be reached since <u>TP did not verify CIS</u> and the amount owed was over $25K.  [Emphasis added.]

---

[3]The "five year rule" to which the SO's notes refer is evidently Internal Revenue Manual ("IRM") pt. 5.15.1.2(5) (Oct. 2, 2009), which provides that, in determining a taxpayer's ability to pay, expenses will be allowed above the national and local standards if (A) taxpayer establishes that he or she can stay current with all paying and filing requirements; (B) the tax liability, including projected accruals, can be paid within five years; and (C) expense amounts are reasonable.  In this particular case, even taking the five-year rule into account, the Salahuddins' disposable income based on actual income and expenses would exceed $5,800 per month, which is much more than the $900 to $1,000 suggested by the Philadelphia Service Center.  As a result, the Philadelphia Service Center apparently erred in suggesting a monthly installment amount that was less than the Salahuddins' actual ability to pay.  <u>See</u> IRM pt. 5.15.1.2(6).

For purposes of the Commissioner's motion for summary judgment, and entertaining all reasonable inferences in favor of the Salahuddins, we assume that the SO's determination not to allow an installment agreement was based in part on the Salahuddins' failure to provide documentation to support the information on the Form 433-A.

Appeals' determination and Tax Court proceedings

On February 24, 2011, Appeals sent to the Salahuddins a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330", with respect to their income tax liabilities for 2004, 2005, and 2006. The notice of determination sustained the proposed levy action and stated, among other things, that the Salahuddins did not qualify for an installment agreement. An attachment to the notice of determination stated in part:

> On September 26, 2010, the Settlement Officer mailed you a letter offering a conference by telephone, face-to-face or correspondence. This letter gave fourteen (14) days to respond if a face-to-face or correspondence conference was preferred. There was no response to this letter. Therefore, a telephone conference was scheduled January 6, 2011 at 10:00 AM Central time. This letter also requested for a Collection Information Statement along with supporting documents by October 14, 2010. The Collection Information was provided; however, there were [sic] no supporting documentation. [Emphasis added.]

We note that this paragraph (1) was incorrect in stating that "[t]here was no response to this letter [of September 6, 2010]", since the Salahuddins responded by

their letter of October 13, 2010, (2) was incorrect in stating that "a telephone conference was scheduled January 6, 2011", since no such conference was scheduled, and (3) was correct in stating that "there were [sic] no supporting documentation" but evidently overlooked the ATM's assurances to the Salahuddins that the information they had provided was "sufficient".

On March 25, 2011, the Salahuddins timely filed their petition with this Court. The petition stated, among other things:

> [W]e have proposed alternative method of paying our federal tax liability and this alternative was positively conveyed to us by the settlement officers' supervisor verbally. * * *
>
> * * * [The ATM] indicated that the Pennsylvania Office already determined the petitioner's could pay between $900-$1000, per month and that he concurred and would update the settlement officer our [sic] this conversation. We drafted a follow up letter recanting [sic] this conversation and sent to the settlement officer to include in the file. This information runs contrary to the notice of determination.

On March 8, 2012, the Commissioner filed his motion for summary judgment, in which he contends: "Because, based on the financial information submitted by petitioners, petitioners have the ability to fully pay their income tax liability, the settlement officer properly rejected petitioners' request for an installment agreement."

Discussion

I.      General legal principles

    A.      Summary judgment

Under Rule 121 (the Tax Court's analog to Rule 56 of the Federal Rules of Civil Procedure), the Court may grant summary judgment where there is no genuine issue of any material fact and a decision may be rendered as a matter of law.  The moving party (here, the Commissioner) bears the burden of showing that no genuine issue of material fact exists, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (same standard under Fed. R. Civ. P. 56).  "The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment."  Espinoza v. Commissioner, 78 T.C. 412, 416 (1982).

In this case we assume the facts as shown by the Commissioner, but viewed in the light most favorable to the Salahuddins.  In that light, the Commissioner's motion must be denied.

B.    Collection review procedure

1.    In general

If a taxpayer fails to pay any Federal income tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property.  However, Congress has added to chapter 64 of the Code certain provisions (in subchapter C, part I, and in subchapter D, part I) as "Due Process for Collections", and those provisions must be complied with before the IRS can proceed with a levy:  The IRS must first issue a final notice of intent to levy and notify the taxpayer of the right to an administrative hearing before Appeals. Sec. 6330(a) and (b)(1).  After receiving such a notice, the taxpayer may request an administrative hearing before Appeals.  Sec. 6320(a)(3)(B), (b)(1).  Administrative review is carried out by way of a hearing before Appeals pursuant to section 6330(b) and (c); and, if the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court under section 6330(d), as the Salahuddins have done.

2.    Agency-level review in levy cases

At the CDP hearing, the Appeals Officer must make a determination whether the proposed collection action may proceed.  In the case of a notice of levy, the procedures for the agency-level CDP hearing before Appeals are set forth in

section 6330(c). The Appeals Officer is required to take into consideration several things:

First, the Appeals Officer must verify that the requirements of any applicable law and administrative procedure have been met by IRS personnel. See sec. 6330(c)(3)(A). The attachment to the notice of determination set forth the Appeal Officer's compliance with these requirements, and the Salahuddins make no challenge as to verification in their petition (or in their response to the motion for summary judgment), so no verification issues under section 6330(c)(1) are at issue.

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including" challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). The Salahuddins' contentions pertain to a collection alternative (i.e., an installment agreement), which we will discuss below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). In their opposition to the motion for summary judgment, the Salahuddins "ask the

court to require the Respondent to re-access any penalty and interest that has accrued on our tax account from the original date of our request for a payment plan." We construe this as a request for an abatement of interest and penalty pursuant to section 6404(e) and (f) and as a challenge to the existence of an underlying liability. It appears that the Salahuddins did not raise this issue before Appeals and that we therefore lack jurisdiction to entertain it, see Giamelli v. Commissioner, 129 T.C. 107, 113-114 (2007); but we need not reach this issue to decide the Commissioner's motion.

Finally, the Appeals Officer must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). The notice of determination found that "the proposed levy action balances the need for efficient collection of taxes with your concern that any collection action be no more intrusive than necessary"; but the Salahuddins' petition and their opposition to the motion for summary judgment assert that the levy would impose a financial hardship on them, and we consider that argument as an assertion of undue intrusiveness. But again, it appears that the Salahuddins did not raise this issue before Appeals and that we therefore lack

jurisdiction to entertain it, but that we do not need to reach it in order to decide the Commissioner's motion.

### 3. Tax Court review

When Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court", pursuant to section 6330(d)(1), as the Salahuddins have done. In such an appeal, where the underlying liability is at issue, we review the determination of Appeals de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). As to issues other than the underlying liability, we review the determination for abuse of discretion. That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Here we review Appeals' denial of an installment agreement, to determine whether it involved an abuse of discretion.

## II. Denial of the Salahuddins' request for an installment agreement

The Commissioner argues that because the Salahuddins offered an amount ($900 to $1,000 per month) that was less than their own reckoning of their surplus monthly income (about $5,800 more income than living expenses), it could not be an abuse of discretion for Appeals to reject such an offer. This might be a winning

argument, except for two problems that arise under the facts as we are required to assume them for purposes of deciding a motion for summary judgment.

A.     Apparent reliance on failure to produce information

IRS personnel in Philadelphia had suggested to the Salahuddins that their information would justify an installment agreement calling for payment of $900 to $1,000 monthly, and the ATM told the Salahuddins that the information they had submitted was "sufficient".  We have consistently held that it is not an abuse of discretion for Appeals to reject collection alternatives and sustain the proposed collection action on the basis of the taxpayer's failure to submit requested financial information.  See Huntress v. Commissioner, T.C. Memo. 2009-161; Prater v. Commissioner, T.C. Memo. 2007-241; Roman v. Commissioner, T.C. Memo. 2004-20.  However, for purposes of this summary judgment motion, we hold that because Appeals had thus advised the Salahuddins that their financial information was "sufficient", Appeals could not thereafter terminate the CDP process on the grounds that the Salahuddins had followed the very advice that Appeals had given them.  To the extent that Appeals' determination was based on a supposed failure to submit information, we cannot say that that determination did not involve an abuse of discretion.

We can easily imagine a denial of an installment agreement based on two clear alternative grounds--i.e., (1) that the taxpayer failed to provide documentation to substantiate his financial information, and separately (2) that the amount offered by the taxpayer was inadequate even assuming accurate the taxpayer's unsupported financial information. If the notice of determination stated such grounds, then the Commissioner could well argue that the first was harmless error, because the second was independent and sufficient. However, our role under section 6330(d) is to review actions that the IRS took, not actions that it could have taken. As the Supreme Court stated in SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943):

> [The agency's] action must be measured by what the * * *
> [agency] did, not by what it might have done. * * * The * * *
> [agency's] action cannot be upheld merely because findings might have
> been made and considerations disclosed which would justify its order
> as an appropriate safeguard for the interests protected by the Act.
> There must be such a responsible finding. * * *

In this case, we cannot say with certainty that the SO proceeded on two independent grounds. The Commissioner admits that "the Notice of Determination does not fully explain the settlement officer's denial of petitioners' installment agreement" but argues that "the settlement officer's case activity records do." However, those records emphatically show a reliance on the fact that the Salahuddins supposedly

failed to provide information to substantiate their financial condition.  In statements addressing the possibility of an installment agreement, the SO said:  "TP has not provided any supporting documentation"; "No supporting documentation was provided"; "without supporting documen[t]ation, full payment is the only alterative that could be considered"; and "No collection alternative could be reached since TP did not verify CIS".  We find that the record before us is equivocal about the reasoning for Appeals' denial of the installment agreement.

The situation is made even more unclear by the factual errors in the attachment to the notice of determination.  We do not by any means hold that a notice of determination must be error-free in order to be sustained.  However, in this circumstance, the error suggesting that the Salahuddins had failed to respond to Appeals' letter has an unfortunate resonance with the unfair determination that they had failed to provide supporting information; and the error suggesting that a telephone conference had been scheduled raises the question whether the SO was confusing two different cases--the Salahuddins case and another case in which other taxpayers had made a material failure to produce information that was requested.  Under Rule 121 we cannot hold that there is no genuine issue as to the reason for

Appeals' determination to deny an installment agreement and the absence of an abuse of discretion in that determination.

B.    Apparent misleading of the taxpayers

For purposes of summary judgment, the evidence shows that the Salahuddins were led to believe that their $900-to-$1,000-per-month proposal for an installment agreement was agreeable to the IRS, and they gratefully submitted a proposal for how their upcoming payments could be applied to their outstanding liabilities.  Until it issued the adverse determination, Appeals did not correct their impression or solicit a different proposal.  We do not hold that these facts constitute offer (by the Salahuddins) and acceptance (by Appeals), giving rise to a contract.  Nor do we hold that Appeals was barred in any way from rejecting the proposal and demanding more.  We hold rather that there is a genuine issue of material fact as to whether Appeals induced the Salahuddins to believe that their information was "sufficient" and that their proposal would be accepted--i.e., whether Appeals thus misled the Salahuddins by inducing them to leave their proposal pending and unrevised--and whether it was an abuse of discretion for Appeals to terminate the CDP hearing by rejecting that proposal, rather than soliciting a satisfactory substitute proposal.

In light of the foregoing, the Commissioner's motion for summary judgment will be denied.

An appropriate order will be issued.