T.C. Summary Opinion 2018-34

UNITED STATES TAX COURT

ERIC AMAEFUNA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23235-16S L.                    Filed July 9, 2018.

Eric Amaefuna, pro se.

Kirsten E. Brimer and Jenna Cantarella (student), for respondent.

SUMMARY OPINION

PANUTHOS, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In this collection due process (CDP) case petitioner seeks review, pursuant to section 6330(d)(1), of the determination by the Internal Revenue Service (IRS or respondent)[2] to uphold a notice of intent to levy to collect petitioner's 2012 and 2014 Federal income tax liabilities. The issues for decision are (1) whether petitioner's underlying liabilities were properly assessed and (2) whether respondent abused his discretion in determining that the collection by levy may proceed.

## Background

Some of the facts have been stipulated, and we incorporate the stipulation and the accompanying exhibits by this reference. Petitioner resided in Pennsylvania when the petition was timely filed.

---

[1](...continued)
Internal Revenue Code in effect for all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

[2]The Court uses the term "IRS" to refer to administrative actions taken outside of these proceedings. The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

Petitioner married Azuka Amaefuna in 1995 and remained married to her throughout all relevant periods. Sometime around 1997 Mrs. Amaefuna moved to the United States to live with petitioner. Sometime in 2002 petitioner and Mrs. Amaefuna moved to their current residence in Pennsylvania. Petitioner and Mrs. Amaefuna have five biological children. Petitioner prepared the income tax returns for himself and Mrs. Amaefuna for the years in issue.

Petitioner operated an insurance sales business before May 2005. On May 23, 2005, petitioner incorporated the business as American Financial Stewardship Corp. (AFSC), an S corporation in Pennsylvania.[3] Petitioner and Mrs. Amaefuna were the sole officers and employees of AFSC. Petitioner served as president of AFSC and Mrs. Amaefuna served as vice president and treasurer. Mrs. Amaefuna performed clerical work for AFSC.

---

[3]If a business meets the requirements of sec. 1361, it may elect to be treated as an "S corporation" and generally avoid corporate tax. Secs. 1362(a), 1363(a). An S corporation, like a partnership, is a flowthrough entity; its income and losses flow through to its shareholders, who then pay income tax. See sec. 1363(b). Sec. 1366(a)(1) provides that an S corporation shareholder determines his or her tax liability by taking into account his or her pro rata share of the S corporation's income, losses, deductions, and credits for the S corporation's taxable year ending with or in the shareholder's taxable year.

During the years in issue petitioner or AFSC[4] had contracts with an unspecified number of insurance vendors, including Foremost Insurance Co., Grand Rapids (FIC). Petitioner's main role at AFSC was to seek out potential clients and sell insurance policies, earning commissions on the basis of sales made.

## I. 2012 Income Tax Returns

FIC issued a Form 1099-MISC, Miscellaneous Income, to petitioner for 2012 reflecting nonemployee compensation of $15,121. Petitioner acknowledged receipt of this amount.

Petitioner timely filed a 2012 Form 1040, U.S. Individual Income Tax Return, electing head of household filing status and reporting adjusted gross income of $57,525 and tax due of $10,597.[5] Petitioner did not remit payment with his return, although in August 2013 he entered into an installment agreement. Petitioner made installment payments until the end of 2013.

---

[4]It is unclear from the record whether petitioner or AFSC was a party to the contracts with FIC and the other insurance vendors.

[5]Petitioner's 2012 Form 1040 was not made a part of the record.

A 2012 Form 1120S, U.S. Income Tax Return for an S Corporation, was timely filed on behalf of AFSC.[6] On its Form 1120S AFSC reported a loss of $1,840.[7] The $15,121 of income from FIC was not reported on AFSC's 2012 Form 1120S.

On March 3, 2014, petitioner filed a 2012 Form 1040X, Amended U.S. Individual Income Tax Return. Petitioner made the following adjustments to his 2012 Form 1040: (1) a decrease of $24,243 to adjusted gross income; (2) a change from the standard deduction of $8,700 to itemized deductions totaling $22,999; (3) a claim for an earned income tax credit (EIC) of $1,827; and (4) a claim for an additional child tax credit of $2,000. The attached Schedule A, Itemized Deductions, claimed deductions for $488 of general sales taxes expense, $3,308 for real estate taxes expenses, and $19,203 for home mortgage interest expense. Petitioner attached two Forms 1098, Mortgage Interest Statement, for taxable year 2011 reflecting home mortgage interest expenses totaling $19,203. Petitioner wrote on the 2012 Form 1040X: "Explanation: Line 1 - Original return did not include Forms 1098 Mortgage Interest herein attached, property & school tax, also

---

[6]Although not entirely clear, it appears that petitioner prepared the income tax returns for AFSC for the years in issue.

[7]The record does not reflect the details of the 2012 Form 1102S, and thus it is unclear how this loss was calculated.

attached herein, Schedule 'A' was not on the original but herein attached."
Petitioner did not explain the reduction to adjusted gross income.

On the basis of the 2012 Form 1040X the IRS partially abated petitioner's tax liability by $3,972 on June 9, 2014.[8] After these adjustments, the application of petitioner's payments, and the application of overpayment credits from 2013 and 2016, a balance due remained for the 2012 tax year.[9]

II.     2014 Income Tax Returns

FIC issued to petitioner a Form 1099-MISC for 2014, reflecting nonemployee compensation of $18,535. Petitioner acknowledged receipt of this amount.

Petitioner timely filed a 2014 Form 1040 reflecting head of household filing status and reporting $57,675 of self-employment income under the business description "Sales". The attached Schedule C, Profit or Loss From Business, reflected $60,000 of gross receipts and deductions totaling $2,325. Petitioner did not report any other income. Petitioner's 2014 Form 1040 return reflected a tax

---

[8]On October 24, 2014, petitioner filed a second 2012 Form 1040X reflecting adjustments that are identical to the adjustments on the 2012 Form 1040X that was filed on March 3, 2014. The IRS did not further adjust petitioner's tax liability.

[9]The IRS applied petitioner's 2013 overpayment credit of $2,497 on April 15, 2014, and petitioner's 2016 overpayment credit of $3,057 on March 27, 2017.

due of $11,678; he did not remit payment with his return and at the time of trial he had not made payments toward the 2014 liability.

Mrs. Amaefuna also separately filed a 2014 Form 1040 electing head of household filing status and reporting $15,957 of self-employment income under the business description "Compliance". The attached Schedule C reported $16,107 in total gross receipts, including $15,001 from AFSC, and a deduction of $150 for legal and professional services expense. Mrs. Amaefuna's reported total tax of $2,255 and credits of $7,917 ($6,143 EIC + $1,774 additional child tax credit), resulting in an overpayment of $5,662.

A 2014 Form 1120S was filed on behalf of AFSC reporting gross receipts of $77,255; this amount did not include the $18,535 of income from FIC. AFSC's 2014 receipts were offset by expenses totaling $82,319, including $74,999 for officers compensation expense,[10] resulting in a loss of $5,064.

III.    Collection Due Process Hearing

To collect petitioner's unpaid 2012 and 2014 liabilities the IRS sent a Notice LT11, Notice of Intent to Levy (notice of intent to levy), on May 24, 2016. In response petitioner timely filed a Form 12153, Request for a Collection Due

---

[10]This was reported as $60,000 (rounded up from $59,998) in gross receipts on petitioner's 2014 Form 1040 and $15,001 in gross receipts on Mrs. Amaefuna's 2014 Form 1040.

Process or Equivalent Hearing, which the IRS received on June 6, 2016. On his Form 12153 petitioner asserted: "I am not liable for (I do not owe) all or part of the taxes as stated by IRS". He did not provide further detail or supporting documentation. Petitioner did not assert an inability to pay the liabilities, nor did he request a collection alternative.

Settlement Officer (SO) Diedre Serra[11] from the IRS Office of Appeals was assigned to petitioner's case. She reviewed the administrative file for taxable years 2012 and 2014 and confirmed that the liabilities had been properly assessed and that all other requirements of applicable law had been met. On August 12, 2016, SO Serra sent petitioner a letter scheduling a telephone CDP hearing for September 20, 2016, and requesting that petitioner provide a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

Petitioner's telephone CDP hearing was rescheduled and held on September 23, 2016. During the hearing petitioner asserted that his liabilities were incorrect because they included amounts reported to him by FIC on Forms 1099-MISC, as paid to petitioner. Petitioner asserted that these amounts should have been

---

[11]At some point after trial Diedre Serra changed her name to Diedre Bartholomew. We will continue to refer to her as SO Serra.

reported to AFSC. SO Serra requested that petitioner provide corrected Forms 1099-MISC, Forms 1040X, or a Form 433-A within 14 days, and she informed petitioner that if she did not receive these documents she would sustain the levy. SO Serra wrote the following notes in her Case Activity Record Print about this exchange:

> Told TP [petitioner] * * * he is being issued 1099s as a self-employed contractor, and if this is incorrect he needed to correct * * * our records show self-employment, and he received all bills to date so this should have been corrected when 1st bills were issued. Also advised until corrected 1099s are issued by the payers so new 1040Xs can be submitted, he is liable for the income as SE [self-employed]. TP states he is not self-employed but will contact payers. Told him has 14 days to get this corrected or submit Form 433-A, if not received must sustain levy and issue NOD [Notice of Determination]. TP asked if he could then go to Tax Court, told him yes if he files the petition within 30 days after our closing letter. TP stated will work on getting this corrected asap.

By October 17, 2016, petitioner had not provided SO Serra with any requested forms, including corrected Forms 1099-MISC or Forms 1040X, and she tentatively determined to sustain the levy and sent this determination to her supervisor. On October 19, 2016, the IRS issued a Letter 3193, Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the proposed levy. In response petitioner timely filed his petition on November 1, 2016, renewing his assertion that his income tax liabilities are

incorrect because of an "error" in the Forms 1099-MISC issued by FIC and also asserting that FIC "is correcting the error. The correction will result in correction of double taxation * * * the 14 days given to me by the appeals office was not sufficient for me to get the error * * * corrected."

## Discussion

I.     Section 6330

We have jurisdiction under section 6330(d)(1) to review respondent's determination that the notice of intent to levy was proper and that respondent may proceed to collect by levy. In reviewing the Commissioner's decision to sustain collection actions, where the validity of the underlying tax liability is properly at issue, the Court reviews the Commissioner's determination of the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews any other administrative determination regarding proposed collection actions for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. An abuse of discretion occurs when the exercise of discretion is without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

A taxpayer may challenge the underlying tax liability during a CDP hearing if the taxpayer did not receive a statutory notice of deficiency for the liability or did not otherwise have the opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Montgomery v. Commissioner, 122 T.C. 1, 8-9 (2004) (holding that taxpayers are allowed to challenge the underlying liability where taxpayers self-assessed their underlying liability and did not receive a notice of deficiency). This Court may consider such a challenge, however, only if the taxpayer properly raised it before the settlement officer. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). An issue is not properly raised at the CDP hearing if the taxpayer fails to request Appeals consideration of the relevant issue or if he or she requests Appeals consideration but fails to present any evidence after being given a reasonable opportunity to do so. LG Kendrick, LLC v. Commissioner, 146 T.C. 17, 34 (2016), aff'd, 684 F. App'x 744 (10th Cir. 2017); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Respondent concedes that petitioner did not have a prior opportunity to contest his underlying liabilities; thus petitioner was allowed to challenge the underlying liabilities at his CDP hearing. Sec. 6330(c)(2)(B); see also Montgomery v. Commissioner, 122 T.C. at 8-9. Respondent asserts that petitioner did not properly raise the issue of his underlying liabilities at the CDP hearing, and

thus the underlying liabilities are not properly at issue before the Court. We need not decide whether petitioner properly raised the issue of his underlying liabilities because petitioner has not presented evidence establishing that (1) the initial tax reporting was incorrect and (2) the underlying assessed tax liabilities are incorrect. See Krishnan v. Commissioner, T.C. Memo. 2016-83, at *9-*10 (holding that even if the underlying liability was in issue the taxpayer did not demonstrate that the assessments were incorrect).

A.     Petitioner's 2012 and 2014 Self-Assessed Taxes

Respondent seeks to collect petitioner's self-assessed liabilities for taxable years 2012 and 2014.[12] In general, the Commissioner's assessment is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Poindexter v. Commissioner, 122 T.C. 280, 286 (2004), aff'd, 132 F. App'x 919 (2d Cir. 2005). In the absence of corroborating evidence, the Court is not required to accept a taxpayer's self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

---

[12]Respondent did not seek adjustments to petitioner's income tax returns or assert increased deficiencies for the years in issue. Accordingly, we resolve only the issue of the self-assessed liabilities challenged by petitioner.

At his CDP hearing and at trial petitioner asserted that he was not liable for the full amounts shown on his income tax returns for the years in issue because the returns reported the income from FIC as earned by petitioner. Petitioner asserts that FIC should have instead issued the Forms 1099-MISC to AFSC. At the time of trial petitioner had not provided corrected Forms 1099-MISC or other evidence (other than his own testimony) to support this assertion, despite asserting in his petition that FIC was "correcting the error".

Petitioner also has not shown that he reported the income from FIC on his Forms 1040 for the years in issue. Petitioner testified that he reported this income for taxable years 2012 and 2014, but it is unclear from the record whether he reported the $15,121 from FIC on his 2012 Form 1040. Additionally, petitioner did not report the $18,535 from FIC on his 2014 Form 1040. This income was not reported on AFSC's 2014 Form 1120S and the only income that petitioner reported on his 2014 Form 1040 was the $60,000 distribution from AFSC.

Even if petitioner had reported the income from FIC on his 2014 Form 1040, it is unclear that the tax consequences would have been different if the income had been reported to AFSC; because petitioner and Mrs. Amaefuna collectively own 100% of AFSC, all income and losses of the S corporation would have flowed through to them. See sec. 1363(b).

Additionally, there are a number of errors and inconsistencies on the individual returns petitioner prepared for himself and Mrs. Amaefuna for the years in issue, including the following: (1) petitioner claimed an unexplained and unsupported reduction to adjusted gross income of $24,243 on his 2012 Form 1040X; (2) petitioner claimed a deduction of $19,203 for mortgage interest expense on his 2012 Form 1040X, but the attached Forms 1098 are for taxable year 2011; (3) petitioner and Mrs. Amaefuna each incorrectly elected head of household filing status on their income tax returns for 2014;[13] (4) petitioner and Mrs. Amaefuna would not have qualified for the EIC for 2014 on the basis of their marriage status and combined adjusted gross income;[14] and (5) petitioner testified that he has professionally prepared income tax returns for clients since 2008,

---

[13]Sec. 1(b) imposes an advantageous tax rate schedule for an individual who is a "head of household" as defined in sec. 2(b). The first eligibility requirement for head of household status is that the taxpayer not be married or a surviving spouse. Sec. 2(b)(1). Exceptions to this requirement include situations where the spouses are separated under a decree of divorce or separation, where one of the spouses is a nonresident alien, or where the spouses live apart for at least the last six months of the year. See secs. 2(b)(2), (c), 7703(b). Petitioner and Mrs. Amaefuna were married in 1995 and have lived together since 1997. Petitioner did not assert, nor does it appear, that any of the above-mentioned exceptions are applicable.

[14]For taxable year 2014 married filing jointly taxpayers with three or more children do not qualify for the EIC if they have earned income exceeding $52,427. See Rev. Proc. 2013-35, sec. 3.06, 2013-47 I.R.B. 537, 540.

preparing as many as 300 income tax returns a year by 2010, but it does not appear that he reported income from this activity for the years in issue.

For these reasons, we hold that petitioner has not met his burden of proving that he overreported his income for 2012 and 2014. Thus, petitioner is liable for his self-assessed liabilities. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Tokarski v. Commissioner, 87 T.C. at 77.

B.     Abuse of Discretion

With respect to the issue of the administrative determination regarding the proposed collection action, we conclude that it was not an abuse of discretion for the Appeals Office to sustain the levy.

Petitioner did not provide SO Serra with amended returns or corrected Forms 1099-MISC within 14 days as requested or provide her with other documentation to support his assertions that the Forms 1099-MISC should have been issued to AFSC. Neither did he submit a Form 433-A or any of the other requested information and documentation. It is well settled that it is not an abuse of discretion for the Appeals Office to sustain a proposed collection action against a taxpayer for failing to submit requested documentation and/or financial information. Pough v. Commissioner, 135 T.C. 344, 351 (2010).

Petitioner did not request additional time to provide evidence to support his assertion before, during, or after the CDP hearing. Petitioner also asserts that 14 days was not enough time for him to obtain corrected Forms 1099-MISC or other evidence. We have held that a 14-day deadline for a taxpayer to provide requested information may be reasonable and that the Appeals Office does not have to provide a taxpayer with an extension of time to provide this information. Shanley v. Commissioner, T.C. Memo. 2009-17, 2009 WL 195929, at *5-*7.

Petitioner did not request a collection alternative such as an offer-in-compromise or an installment agreement and did not submit to SO Serra a specific offer or propose any specific terms. The Appeals Office does not abuse its discretion in failing to consider an offer that petitioner did not make. Huntress v. Commissioner, T.C. Memo. 2009-161, 2009 WL 1883984, at *5.

In making the determination whether to sustain the proposed levy, section 6330(c)(3) requires the SO to consider: (1) whether the requirements of any applicable law or administrative procedure have been met; (2) any issues appropriately raised by the taxpayer; and (3) whether the collection actions balance the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. See also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001). The record reflects

that SO Serra considered each of these requirements. Therefore, we conclude that it was not an abuse of discretion to sustain the proposed collection action.

## II. Conclusion

For the reasons stated above, we sustain the determination of the Appeals Office to proceed with the levy. We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.