T.C. Memo. 2009-161

UNITED STATES TAX COURT

GARY E. HUNTRESS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18574-08L.                    Filed July 1, 2009.


        R issued to P a notice of filing of Federal tax
lien, and P timely requested a hearing under I.R.C.
sec. 6320.  In that request P asked for a face-to-face
hearing and indicated that he desired an offer-in-
compromise or an installment agreement, but P never
made a concrete proposal of either.  P did not submit
his financial information as requested and was not
current in his filing obligations.  As a result, R
refused to hold a face-to-face conference as P had
requested.  P did not participate in his telephone
collection due process conference, and R issued to P a
final notice of determination that R would sustain the
filing of the Federal tax lien.  P appealed that
determination to this Court, arguing that he was
entitled to a face-to-face hearing whether or not he
had submitted his financial information or fulfilled
his filing obligations.  R moved for summary judgment,
and P opposed R's motion.

<u>Held</u>:  R's Office of Appeals did not abuse its discretion in sustaining the filing of a Federal tax lien when (1) P generally requested a collection alternative, but made no concrete proposals, (2) P failed to supply his financial information as requested, and (3) P was not current with his filing and/or payment obligations.


Gary E. Huntress, pro se.

<u>Erika B. Cormier</u>, for respondent.


MEMORANDUM OPINION


GUSTAFSON, <u>Judge</u>:  This case is an appeal by petitioner Gary E. Huntress, pursuant to section 6330(d),[1] asking this Court to review the notice of determination issued by the Internal Revenue Service (IRS) sustaining the filing of a notice of Federal tax lien to collect Mr. Huntress's unpaid Federal income tax for tax years 2000 and 2001.  The case is currently before the Court on respondent's motion for summary judgment filed May 5, 2009. Mr. Huntress filed an opposition to respondent's motion on June 9, 2009.  The principal issue for decision is whether the IRS's Office of Appeals abused its discretion by denying Mr. Huntress a face-to-face hearing.  For the reasons explained below, we will grant respondent's motion.

---

[1]Except as otherwise noted, all section references are to the Internal Revenue Code (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The following facts are based on the documents in the record of the IRS's hearing held pursuant to section 6330(b) and (c). Those documents are authenticated by the declaration of the IRS's settlement officer included with respondent's motion. As is discussed below, Mr. Huntress did not raise any genuine issue as to these facts.

Mr. Huntress filed no tax returns for the years 2000 and 2001, the two years at issue. In June 2005 the IRS sent him a statutory notice of deficiency for those years (and for the non-suit years 2002 and 2003). He received the notice and wrote a responsive letter to the IRS disputing it, but he did not file a deficiency suit in this Court. The IRS therefore assessed the deficiencies in November 2005.

In April 2006 the IRS sent Mr. Huntress a notice of its intent to levy against him to collect his unpaid tax income tax liabilities for 2000 and 2001. (This is not the collection notice at issue in this suit.) That notice advised him of his right to request a collection due process (CDP) hearing before the Office of Appeals. He requested the hearing but did not attend it, and in December 2006 the IRS issued a notice of determination sustaining the proposed levy. Mr. Huntress did not file in this Court a petition for review of that determination.

On February 14, 2008, the IRS sent Mr. Huntress a notice of Federal tax lien, advising him that it had filed a notice of lien against him with respect to his unpaid tax liabilities for 2000 and 2001 and advising him of his right to request a CDP hearing before the Office of Appeals. He timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, to which was attached a document entitled "Attachment letter to CDPH Request form (form no. 12153)". The attachment is a laundry list of potential defects in IRS procedure and arguments and requests that a taxpayer might make in the CDP context. Mr. Huntress placed an "X" in the blank by each item, even though some of them are manifestly incorrect with respect to him (e.g., "I did not receive a statutory Notice of Deficiency") or do not apply to him (e.g., a dispute about "the $500 frivolous [return] penalty" of section 6702, which was not assessed against him).

On this attachment Mr. Huntress requested "collection alternatives including Offer in Compromise (OIC) [and] payment schedule" and requested that his hearing before the Office of Appeals be a face-to-face hearing. In a letter of April 11, 2008, he repeated his request for a face-to-face hearing.

In a letter of April 25, 2008, the Office of Appeals explained the hearing process, and explained that the IRS could not consider an offer-in-compromise (OIC) or installment agreement "unless a taxpayer has filed all tax returns for which

he/she is liable". The letter requested that Mr. Huntress provide: financial information about himself on Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals; copies of his returns for 2004, 2005, 2006, and 2007; and proof of estimated tax payments or a wage statement for 2008.

The Office of Appeals received no response from Mr. Huntress to its letter of April 25, 2008. On May 20, 2008, it sent him another letter, which scheduled a telephone conference (not a face-to-face conference) for June 17, 2008, repeated the requests of the April 25 letter (for Form 433-A, returns for 2005, 2006, and 2007, and proof of estimated tax), and stated as follows:

> Please be advised that Appeals does not provide a face-to-face conference if the [sic] you are not eligible for the collection alternative you are seeking. You were provided an opportunity in a letter sent out on April 25, 2008 to provide information to demonstrate that you were eligible for a collection alternative. We have received no response to that request and there-fore we are not allowing you a face-to-face hearing.

Mr. Huntress responded with a letter dated June 13, 2008, in which he stated that he did not want a telephone conference and requested "a face to face hearing as prescribed by law". He disputed the right of the Office of Appeals to set preconditions for a face-to-face hearing, and he stated:

> Furthermore, pertaining to your request that I file the delinquent tax returns from 2005 to 2007 and complete Form 433-A, I respectfully decline to comply with this request for two reasons: (1) you failed to state the relevant law that would require me to file and/or

complete such returns and forms, and (2) this appears to be an ex parte request for private and personal information.  Also, the U.S. Congress has no precondition to filing Form 1040 or provide an Offer in Compromise prior to any CDP Hearing.

Mr. Huntress did not participate in his telephone CDP hearing scheduled for June 17, 2008.  On June 30, 2008, the Office of Appeals issued its notice of determination sustaining the filing of the notice of Federal tax lien.  On July 29, 2008, Mr. Huntress timely filed his petition, which he supplemented on October 14, 2008.  At the time that he filed his petition, Mr. Huntress resided in Massachusetts.

On May 5, 2009, respondent moved for summary judgment, contending that no genuine issue of material fact remains for trial and that judgment in respondent's favor is warranted because the determination by the Office of Appeals did not constitute an abuse of discretion.  On June 9, 2009, Mr. Huntress opposed the motion for summary judgment and argued that he was entitled to a face-to-face hearing, which he had been denied.

Discussion

I.   Applicable Legal Principles

A.   Summary Judgment Standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary (and potentially expensive) trial.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment may

be granted where there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). The party moving for summary judgment (here, respondent) bears the burden of showing that there is no genuine issue as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment (here, Mr. Huntress). Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). However, Rule 121(d) provides,

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party [such as Mr. Huntress] may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. * * *

In compliance with Rule 121(b), respondent made and supported a showing of the facts of the case; but Mr. Huntress's only response is his unsworn, 1-1/2-page opposition, without affidavits or other evidence, that does not contradict respondent's particular assertions but only argues about Mr. Huntress's supposed right to a face-to-face hearing. Respondent's statement of facts is therefore uncontroverted and is accepted for purposes of ruling on the motion.

B.    Collection Review Procedure

When a taxpayer fails to pay any Federal income tax liability after demand, section 6321 imposes a lien in favor of the United States on all the property of the delinquent taxpayer, and section 6323(f) authorizes the IRS to file notice of that lien.  However, within five business days after filing a notice of tax lien, the IRS must provide written notice of that filing to the taxpayer.  Sec. 6320(a).  After receiving such a notice, the taxpayer may request an administrative hearing before the Office of Appeals.  Sec. 6320(a)(3)(B), (b)(1).  Administrative review is carried out by way of a hearing before the Office of Appeals pursuant to section 6330(b) and (c); and, if the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court under section 6330(d), as Mr. Huntress has done.

For the agency-level CDP hearing before the Office of Appeals, the pertinent procedures are set forth in section 6330(c):

First, the IRS's appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).[2]

_____

[2]In the case of the lien filed against Mr. Huntress, the basic requirements, see sec. 6320, for which the appeals officer was to obtain verification are:  the issuance of a notice of deficiency, sec. 6212; a timely assessment of the liability,

(continued...)

Although such issues appeared on the laundry list attached to Mr. Huntress's request for a hearing, respondent's motion sets forth the IRS's compliance with these requirements, and Mr. Huntress made no challenge to it in his opposition, so no "verification" issues under section 6330(c)(1) are still at issue.

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy," including challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Mr. Huntress's principal contention--that he should have gotten a face-to-face hearing in order to present an OIC or installment agreement--pertains to that second set of issues, which we will discuss below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). Mr. Huntress had that prior opportunity when the IRS sent him a notice of deficiency, and he had the option of filing a

---

[2](...continued)
secs. 6201(a)(1), 6501(a); notice and demand for payment of the liability, sec. 6303; and notice of the filing of the lien and of the taxpayer's right to a CDP hearing, secs. 6320(a) and (b).

deficiency suit in this Court.  Therefore, issues of the underlying liability for the tax are not at issue.

When the Office of Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court", pursuant to section 6330(d)(1), as Mr. Huntress has done.  In such an appeal (where the underlying liability is not at issue), we review the determination of the Office of Appeals for abuse of discretion.  That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176 (2000).

II.  Respondent's Entitlement to Summary Judgment

Section 6320(b)(1) provides that a "hearing shall be held" by the Office of Appeals.  Contrary to Mr. Huntress's argument, the statute does not describe the nature of that hearing.  As we have previously observed,

> Hearings at the Appeals level have historically been conducted in an informal setting.  * * *  When Congress enacted section 6330 * * *, Congress was fully aware of the existing nature and function of Appeals.  Nothing in section 6330 or the legislative history suggests that Congress intended to alter the nature of the Appeals hearing * * *.

Davis v. Commissioner, 115 T.C. 35, 41 (2000).  The regulations implementing the CDP process provide as follows:

> A face-to-face CDP conference concerning a collection alternative, such as an installment agreement or an

> offer to compromise liability, will not be granted unless other taxpayers would be eligible for the alternative in similar circumstances.  For example, because the IRS does not consider offers to compromise from taxpayers who have not filed required returns or have not made certain required deposits of tax, as set forth in Form 656, "Offer in Compromise," <u>no face-to-face conference will be granted to a taxpayer who wishes to make an offer to compromise but has not fulfilled those obligations</u>. * * *

Sec. 301.6320-1(d)(2), Q&A-D8, Proced. & Admin. Regs. (26 C.F.R.) (emphasis added).

This addresses Mr. Huntress's principal contention (i.e., that he was supposedly entitled to a face-to-face hearing), but his contention essentially puts the cart before the horse.  Where a taxpayer proposes a collection alternative such as an OIC, the hearing (whether face-to-face or telephonic) is a means for the Office of Appeals to consider the OIC.  Where denial of a face-to-face hearing would impede adequate consideration of an OIC, then that denial might itself be an abuse of discretion.  However, the ultimate question is whether the Office of Appeals abused its discretion by not agreeing to an OIC.  We find that it did not.

Mr. Huntress made three fatal omissions that doomed his hopes for an OIC:  He (1) never made a concrete proposal of specific terms for an OIC, (2) never provided the financial information to substantiate the proposal, and (3) never showed his compliance with filing requirements (in particular, his returns for 2005 through 2007, which he instead refused to file).

Any one of these failures justified the Office of Appeals's determination not to allow an OIC:

First, it was not an abuse of discretion for the Office of Appeals to reject collection alternatives when none were proposed by Mr. Huntress.  See Cavazos v. Commissioner, T.C. Memo. 2008-257 (citing Kendricks v. Commissioner, 124 T.C. 69, 79 (2005)); see also Nelson v. Commissioner, T.C. Memo. 2009-108 (Appeals did not abuse its discretion in sustaining a lien when a taxpayer requested an OIC generally but had not prepared one).

Second, it was not an abuse of discretion for the Office of Appeals to reject collection alternatives and sustain the proposed collection action on the basis of the failure of Mr. Huntress to submit requested financial information.  See Prater v. Commissioner, T.C. Memo. 2007-241; Chandler v. Commissioner, T.C. Memo. 2005-99; Roman v. Commissioner, T.C. Memo. 2004-20.  In doing so, the Office of Appeals simply followed the requirements of section 301.6320-1(e)(1), Proced. & Admin. Regs., and Rev. Proc. 2003-71, 2003-2 C.B. 517.

Third, it was not an abuse of discretion for the Office of Appeals to consider Mr. Huntress ineligible for an OIC on the ground that he had a history of noncompliance with the tax laws and was not in compliance with current tax obligations.  See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007).  In doing so, the Office of Appeals followed the requirements of the

regulations.  See sec. 301.6320-1(d)(2), Q&A-D8, Proced. & Admin. Regs. ("the IRS does not consider offers to compromise from taxpayers who have not filed required returns or have not made certain required deposits of tax"); see also Internal Revenue Manual, pt. 5.8.3.4.1 (Sept. 1, 2005), 5.19.1.6.2(3) (June 27, 2005).

## Conclusion

On these undisputed facts, we cannot hold that the decision of the Office of Appeals to sustain the filing of the Federal tax lien was arbitrary, capricious, or without sound basis in fact or law.  As a result, we conclude that the Office of Appeals did not abuse its discretion, and we hold that respondent is entitled to the entry of a decision sustaining the determination as a matter of law.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.