T.C. Memo. 2018-122

UNITED STATES TAX COURT

JOANNA KANE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10988-17L.                    Filed August 6, 2018.

<u>Taso Michael Milonas</u>, for petitioner.

<u>John T. Arthur</u> and <u>Brandon S. Cline</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[*2]** the Internal Revenue Service (IRS or respondent) to uphold a notice of Federal tax lien (NFTL) filing. The issues for decision are: (1) whether petitioner can challenge in this CDP case her underlying liability for certain trust fund recovery penalties (TFRPs), and (2) whether the IRS settlement officer abused his discretion in sustaining the proposed collection action. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and respondent's motion papers, including the attached declaration and exhibits. See Rule 121(b). Petitioner resided in Florida when she timely filed her petition.

Petitioner was a co-owner and employee of Keeping the Books, Inc. (KTB), a Florida corporation that provided bookkeeping services. KTB provided book-keeping services for various clients. One of its important clients was Focus Rent-als, LLC (Focus), a Florida company.

Focus was wholly owned by David Goldsmith, a photographer. Focus was in the business of producing live video shoots, either "on set" in Miami or "on location" elsewhere in the country. As a result Mr. Goldsmith traveled frequently.

**[*3]** KTB provided Focus with bookkeeping services for five years, from April 2004 through July 2009. Petitioner served as the primary point of contact for this client. She performed much of her bookkeeping work on site at Focus' office. She typically visited Focus' office once or twice a week, working there for a full or half day, depending on the workload.

Because Mr. Goldsmith traveled frequently, he gave petitioner check-signing authority over Focus' bank account. This enabled petitioner to sign checks when Mr. Goldsmith was away. Petitioner signed checks for Focus on multiple occasions during 2007, 2008, and 2009.

As the general economy began to decline in 2007, the fashion photography business faced strong headwinds. Mr. Goldmith also maintained what petitioner describes as an "extravagant lifestyle." For both reasons, Focus' financial situation deteriorated, and it became delinquent in its employment tax obligations.

After interviewing petitioner, IRS Revenue Officer (RO) Jaslar determined that her possession and exercise of check-signing authority made her a "responsible person" of Focus required to "collect, truthfully account for, and pay over" its employment taxes. See sec. 6672(a). On April 6, 2011, RO Jaslar completed Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment, recommending the assertion of TFRPs against petitioner for six calendar quarters

[*4] during 2007-2009. His supervisor, Group Manager Pickett, approved this recommendation.

The IRS sent petitioner a Letter 1153, Trust Fund Recovery Penalty Letter. This letter explained that the IRS proposed to assess TFRPs against her for the six quarters in question and informed her of her right to appeal or protest this action. Petitioner filed a timely appeal with the IRS Appeals Office, disputing the determination that she was a "responsible person" of Focus. She was represented by a tax professional at the Appeals Office conference. The Appeals officer determined that assertion of TFRPs against petitioner was appropriate.

On February 23, 2012, following completion of the Appeals Office hearing, RO Freda requested assessment of TFRPs against petitioner, and his supervisor, Group Manager Villano, approved that request. TFRPs for the six quarters in question were accordingly assessed on March 1, 2012. At that time the aggregate amount of those liabilities exceeded $35,000.

On August 16, 2016, in an effort to collect these unpaid TFRPs, the IRS filed an NFTL and sent petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing. Petitioner timely requested a CDP hearing. In her request she indicated that she wanted a collection alternative and checked the box marked "Offer in Compromise." She also requested withdrawal of the NFTL, con-

[*5] tending that the TFRPs the IRS sought to collect "are the result of another person's business" and that she was not a responsible person.

The IRS assigned petitioner's hearing request to a settlement officer (SO). On January 17, 2017, the SO sent petitioner a letter scheduling a telephone CDP hearing for February 22, 2017, and requesting that she provide Form 656, Offer in Compromise, and specified financial information. He advised petitioner that, if she did not timely supply this information or participate in the hearing, he would make a determination based on the information in the case file.

Petitioner did not participate in the CDP hearing or request that it be re-scheduled. The SO sent her a follow-up letter giving her an additional 14 days to submit the information. On February 24, 2017, the SO received a fax from petitioner's representative stating that he had missed the hearing because of illness. The SO agreed to reschedule the hearing for March 1, 2017. Shortly before the rescheduled hearing petitioner's representative called the SO and left a message stating that petitioner intended to submit an offer-in-compromise (OIC) based on doubt as to liability. No such offer was ever submitted.

On March 1, 2017, the SO called the representative for the rescheduled hearing. Upon being informed that the representative was unavailable, the SO left his contact information and requested that the representative call him back. After

**[*6]** receiving no further communication from petitioner or her representative during the ensuing month, the SO closed the case.

On April 11, 2017, the IRS issued a notice of determination sustaining the NFTL. The notice explained that petitioner could not challenge her underlying liability for the TFRPs because she had previously advanced this challenge before the Appeals Office. The notice further explained that petitioner was ineligible for a collection alternative because she had failed to submit an OIC for consideration and was not in compliance with her tax return filing obligations. (IRS records indicate that petitioner has not filed a Federal income tax return since 2006.)

Petitioner timely petitioned this Court seeking redetermination. Her sole assignment of error in the petition is that she is not liable for the TFRPs. On March 1, 2018, respondent filed a motion for summary judgment. On March 7, 2018, we ordered petitioner to respond to that motion, but she ignored our order and submitted no response.

## Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no

**[\*7]** genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of her pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

Because petitioner did not respond to the motion for summary judgment, we could enter decision against her for that reason alone. See Rule 121(d). We will nevertheless consider the motion on its merits. We conclude that no material facts are in dispute and that this case is appropriate for summary adjudication.

B.      Standard of Review

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. Where the taxpayer has properly challenged her underlying tax liability, we review the IRS' determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying tax liability is not properly before us, we review the IRS' determination for abuse of discretion. Ibid.

**[*8]**    A taxpayer may raise a CDP challenge to the existence or amount of her underlying tax liability only if she "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute" it. Sec. 6330(c)(2)(B).  In determining whether the taxpayer had a prior opportunity to dispute her liability, the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not.  Where a liability is not subject to deficiency procedures, "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability."  See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

As assessable penalties, TFRPs are not subject to deficiency procedures. Sec. 6671(a); Shaw v. United States, 331 F.2d 493, 494-496 (9th Cir. 1964); Moore v. Commissioner, 114 T.C. 171, 175 (2000).  Notwithstanding the absence of a notice of deficiency, a taxpayer may be able to dispute her liability for TFRPs (without paying them first) by resisting IRS collection efforts through the CDP procedure and then seeking review in this Court.  Williams v. Commissioner, 131 T.C. 54, 58 n.4 (2008); Callahan v. Commissioner, 130 T.C. 44, 48 (2008).  But this route to prepayment judicial review is available only if the taxpayer "did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).

**[\*9]**  "A taxpayer has the opportunity to dispute his liability for a trust fund re-covery penalty when he receives a Letter 1153."  Thompson v. Commissioner, T.C. Memo. 2012-87, 103 T.C.M. (CCH) 1470, 1472.  Upon receiving the Letter 1153, petitioner appealed her TFRP liability to the Appeals Office.  "A conference with the Appeals Office provides a taxpayer a meaningful opportunity to dispute an underlying tax liability."  Lewis v. Commissioner, 128 T.C. 48, 61 (2007); see sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.  Although petitioner's challenge was unsuccessful, she had a clear opportunity to dispute her liability.  See sec. 6330(c)(2)(B).  She was accordingly precluded from disputing her TFRP liability a second time through the CDP process, and she is likewise precluded from challenging that liability here.  Lewis, 128 T.C. at 61; sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.  We accordingly review the SO's actions for abuse of discretion only.

C.    Analysis

In deciding whether the SO abused his discretion in sustaining the proposed collection action we consider whether he:  (1) properly verified that the require-ments of applicable law and administrative procedure had been met, (2) consid-ered any relevant issues petitioner raised, and (3) considered whether "any pro-posed collection action balances the need for the efficient collection of taxes with

**[\*10]** the legitimate concern of \* \* \* [petitioner] that any collection action be no more intrusive than necessary." <u>See</u> sec. 6330(c)(3).

Our review of the record establishes that the SO reviewed petitioner's account transcripts to verify that the liabilities in question had been properly assessed. In her CDP hearing request petitioner checked the box for NFTL withdrawal. But her only argument for withdrawing the NFTL was that she had no underlying liability for the TFRPs, an argument that the SO correctly concluded she could not properly advance. Petitioner submitted no documentation to show that she fit within any of the categories justifying NFTL withdrawal under section 6323(j).

Another relevant legal and administrative requirement is that imposed by section 6751(b)(1). It provides: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

In <u>Blackburn v. Commissioner</u>, 150 T.C. __ (Apr. 5, 2018), the IRS argued that section 6751(b) does not apply to TFRPs at all. We found no need to decide that question because the record included a Form 4183 reflecting supervisory approval of the TFRPs in question. We determined that the Form 4183 was sufficient to enable the SO to verify that the requirements of section 6751(b)(1) had

[*11] been met with respect to the TFRPs, assuming the IRS had to meet those requirements in the first place.

Here, respondent submitted a declaration that attached a Form 4183 showing that the TFRPs assessed against petitioner had been approved in writing by Group Manager Pickett, the immediate supervisor of RO Jaslar. In Blackburn, we held that an actual signature is not required; the form need only show that the TFRPs were approved by the RO's supervisor. Accordingly, we find there to be a sufficient record of prior approval of the TFRPs in question.

Finally, we find that the SO did not abuse his discretion by closing this case and rejecting any collection alternative. Although petitioner indicated an intention to submit an OIC, neither she nor her representative ever did so. We have consistently held that it is not an abuse of discretion for an Appeals officer to reject collection alternatives and sustain collection action where the taxpayer has failed, after being given sufficient opportunities, to supply the required forms and put an actual offer on the table. See Huntress v. Commissioner, T.C. Memo. 2009-161, 98 T.C.M. (CCH) 8, 10-11; Prater v. Commissioner, T.C. Memo. 2007-241, 94 T.C.M. (CCH) 209, 210; Roman v. Commissioner, T.C. Memo. 2004-20, 87 T.C.M. (CCH) 835, 838. In any event, IRS records indicate petitioner has failed to comply with her tax return filing obligations for more than 10 years. The SO

**[\*12]** could properly have rejected any proposed collection alternative on this ground alone.  See Cox v. Commissioner, 126 T.C. 237, 257-258 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008); Solny v. Commissioner, T.C. Memo. 2018-71, at \*10-\*11.

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and affirm the proposed collection action.  We note that petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an OIC or installment agreement supported by the necessary financial information.

To reflect the foregoing,

An appropriate order and decision will be entered for respondent.