T.C. Memo. 2018-128

UNITED STATES TAX COURT

KATHY BLETSAS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4485-17L.                           Filed August 14, 2018.

Frank Agostino and Malinda A. Sederquist, for petitioner.

James P.A. Caligure, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c)[1] and 6330(d)(1) of the determination by

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] the Internal Revenue Service (IRS or respondent) to uphold a notice of Federal tax lien (NFTL) filing. The IRS initiated the collection action with respect to trust fund recovery penalties (TFRPs) that it had assessed against petitioner for unpaid employment taxes of Delta Mechanical Corp. (Delta). Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of law. We agree and accordingly will grant the motion.

Background

The following facts are based on the parties' pleadings and motion papers, including the attached affidavits and exhibits. Petitioner resided in New York when she filed her petition.

Petitioner was an officer and the sole shareholder of Delta, a New York corporation that became delinquent in its employment tax obligations. After Delta failed to file required tax returns, the IRS assessed employment taxes against it for three calendar quarters in 2014 and 2015. The balance of these unpaid taxes exceeded $600,000. On December 16, 2015, the IRS and Delta entered into a business installment agreement (IA), under which Delta would make monthly payments of $7,500 until its liability was satisfied.

**[\*3]**   On November 10, 2015, the IRS sent petitioner a Letter 1153, Trust Funds Recovery Penalty Letter.  This letter informed her of the IRS' determination that she was a person required to "collect, truthfully account for, and pay over" Delta's employment taxes.  See sec. 6672(a).  The letter proposed to assess TFRPs against her for the calendar quarters in question, stating:  "You * * * have the right to appeal or protest this action.  To preserve your appeal rights you need to mail us your written appeal within 60 days from the date of this letter (75 days if this letter is addressed to you outside the United States)."  The letter included detailed instructions about how to file an appeal with the IRS Appeals Office.

Petitioner did not file an appeal with the IRS Appeals Office or take any other action in response to the Letter 1153.  The IRS accordingly assessed TFRPs against her for the three quarters in question.  At the time of the assessment, the aggregate amount of the TFRPs exceeded $400,000.

The revenue officers (ROs) assigned to petitioner's case concluded that levy action should not be taken against her "because collection was going to be withheld while the business is paying" though Delta's IA.  However, they concluded that an NFTL should be filed to protect the Government's interest.  Accordingly, on July 12, 2016, the IRS sent petitioner Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320.

[*4]    Petitioner timely requested a CDP hearing, advancing numerous contentions.  Her principal contention was that the NFTL should be withdrawn and the TFRPs abated because Delta, pursuant to its IA, was making payments intended to satisfy its employment tax liabilities in full.  She urged that the ROs who had asserted the TFRPs and filed the NFTL failed to follow the procedures in the Internal Revenue Manual (IRM) when taking these steps.

The case was assigned to a settlement officer (SO) from the IRS Appeals Office.  In October 2016 the SO held a telephone CDP hearing with petitioner's representative.  During that hearing her representative contended that collection should not proceed against petitioner while Delta's IA remained in effect.

The SO replied that the IRS may properly assert a TFRP against a responsible person even if the debtor company is making installment payments.  The RO assigned to Delta's case had requested financial information from petitioner to determine whether assertion of TFRPs against her was appropriate.  Petitioner had neglected to provide that information and had missed the RO's deadline for scheduling an interview to discuss these matters.  The SO concluded that the RO had acted permissibly in asserting the TFRPs, notwithstanding Delta's IA, because "[i]n essence * * * [petitioner] was not fully cooperative."

**[*5]** The SO informed petitioner that, in order for him to consider collection alternatives, petitioner had to provide a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and supporting financial documentation. The SO instructed petitioner to submit these documents within 14 days. After receiving no further communication from petitioner, the SO closed the case and issued on January 30, 2017, a notice of determination sustaining the NFTL filing.

Petitioner timely petitioned this Court for review. On March 2, 2018, respondent filed a motion for summary judgment, and he later supplemented that motion. Petitioner timely responded to the motion on April 9, 2018. On May 25, 2018, respondent filed a reply addressing the application of section 6751(b)(1) to the TFRPs in question. Respondent attached to his reply a declaration from Edwin Renard, an IRS supervisory agent, and a Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment. This form shows that the initial determination of the TFRPs by RO Kacic was approved in writing by Group Manager Renard, whose typed signature appears on that form.

**[\*6]**                                                  Discussion

I.      Summary Judgment Standard and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Under Rule 121(b), the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  Ibid.  However, the nonmoving party may not rest upon the mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial.  Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.  We find that no material facts are in dispute and that this case may appropriately be adjudicated summarily.

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  Where the taxpayer has properly challenged her underlying tax liability for the periods in question, we review the IRS determination de novo.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the taxpayer's un-

**[\*7]** derlying tax liability is not properly before us, we review the IRS determination for abuse of discretion only. Ibid. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); see also Keller v. Commissioner, 568 F.3d 710, 716 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166.

A taxpayer may raise a CDP challenge to the existence or amount of her underlying tax liability only if she "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute" it. Sec. 6330(c)(2)(B). In determining whether the taxpayer had a prior opportunity to dispute her liability, the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not. Where a liability is not subject to deficiency procedures, "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

As assessable penalties, TFRPs are not subject to deficiency procedures. Sec. 6671(a); Shaw v. United States, 331 F.2d 493, 494-496 (9th Cir. 1964); Moore v. Commissioner, 114 T.C. 171, 175 (2000). Notwithstanding the absence

[*8] of a notice of deficiency, a taxpayer may be able to dispute her liability for TFRPs (without paying them first) by resisting IRS collection efforts through the CDP procedure and then seeking review in this Court. Williams v. Commissioner, 131 T.C. 54, 58 n.4 (2008); Callahan v. Commissioner, 130 T.C. 44, 48 (2008). But this route to prepayment judicial review is available only if the taxpayer "did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B).

"A taxpayer has the opportunity to dispute his liability for a trust fund recovery penalty when he receives a Letter 1153." Thompson v. Commissioner, T.C. Memo. 2012-87, 103 T.C.M. (CCH) 1470, 1472; see also Pough v. Commissioner, 135 T.C. 344, 349 (2010). Upon receiving a Letter 1153, the taxpayer may appeal the IRS determination of TFRP liability by submitting a protest to the IRS Appeals Office. If a taxpayer fails to avail herself of this opportunity, she is not entitled to advance a later challenge to her liability before the Appeals Office or this Court. Thompson, 103 T.C.M. (CCH) at 1472.

The IRS sent petitioner a Letter 1153 on November 10, 2015. During the CDP hearing she did not deny that she had received this letter, and the SO verified that it had been properly issued. The Letter 1153 informed petitioner of her appeal rights and provided clear instructions about how to appeal. She nevertheless took

**[*9]** no action in response to that letter. Because petitioner had, but neglected to avail herself of, a prior opportunity to challenge her TFRP liability before the IRS Appeals Office, she was precluded from disputing that liability at the CDP hearing. See sec. 6330(c)(2)(B); Thompson, 103 T.C.M. (CCH) at 1472; sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

Even if petitioner could have challenged her TFRP liability at the CDP hearing, she submitted no evidence to the SO on this point, and she failed to advance such a challenge in her petition to this Court. She is thus precluded from disputing her underlying TFRP liabilities now. Rule 331(b)(4); see Thompson v. Commissioner, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); Woodley v. Commissioner, T.C. Memo. 2017-242, at *8-*9; sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. We thus review the SO's actions for abuse of discretion only.

## II.     Analysis

In deciding whether the SO abused his discretion in sustaining the proposed collection action we consider whether he:  (1) properly verified that the requirements of applicable law and administrative procedure had been met; (2) considered any relevant issues petitioner raised; and (3) considered whether "any pro-

[*10] posed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

Petitioner's primary contention is that the IRS cannot collect TFRPs from her so long as it is receiving payments from Delta for the same employment tax liabilities. In her view, the assertion of the TFRPs while Delta's IA was in effect contravened IRM guidelines, and the SO's determination to sustain the NFTL with respect to those TFRPs was therefore improper.

The Code imposes liability on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" who willfully fails to do so. Sec. 6672(a). In this setting, "the employer bears principal liability under section 3403 for the trust fund taxes that should have been withheld, and the 'responsible persons' bear derivative liability for those same taxes under section 6672." Dixon v. Commissioner, 141 T.C. 173, 192 (2013). Liability under section 6672 is thus "separate and distinct from the underlying trust fund tax liability of an employer." Hellman v. Commissioner, T.C. Memo. 2013-190, 106 T.C.M. (CCH) 138, 147.

Where TFRPs are assessed, "numerous individuals and/or entities may be liable for redundant penalties deriving from the same unpaid tax." Dixon, 141

**[\*11]** T.C. at 192. But under longstanding IRS policy, unpaid trust fund taxes "will be collected only once, whether from the business, or from one or more of its responsible persons." IRM pt. 1.2.14.1.3(2) (June 9, 2003); pt. 8.25.2.3(5) (Oct. 19, 2007) ("Even though the Service may make assessments against more than one responsible person for a specific quarterly liability, it only collects the total amount once."). "[T]he IRS cross-references payments against the trust fund tax liability of an employer and payments against the section 6672 penalty liability of a responsible person," so that all payments ultimately reduce the TFRP liability of each responsible person. Hellman, 106 T.C.M. (CCH) at 147.

The IRS has assessed TFRPs against petitioner, and it is receiving payments from Delta pursuant to the IA. Section 6672 allows the IRS to seek collection simultaneously from the employer and from its responsible persons. See USLIFE Title Ins. Co. of Dallas v. Harbison, 784 F.2d 1238, 1243 (5th Cir. 1986) ( "[T]he fact that more than one person is responsible for a particular delinquency does not relieve another responsible person of her personal liability, nor can a responsible person avoid collection against herself on the ground that the Government should first collect the tax from someone else."). The record establishes that the IRS has not yet collected enough to satisfy Delta's outstanding tax liabilities. Until those

[*12] liabilities are satisfied in full, the IRS is free to preserve its collection rights against petitioner.  See Woodley, at *13.

Petitioner emphasizes an IRM provision stating that an RO "[i]n general * * * [should] not request assessment of Trust Fund Recovery Penalties (TFRPs) if business taxpayers meet the terms of installment agreements."  IRM pt. 5.14.7.4.1(6) (Mar. 11, 2011).  This is a general statement of IRS policy regarding acceptance of business IAs that cover employment taxes, and this general statement is subject to qualification.  Indeed, the IRM explicitly states that "TFRPs must be considered on the potentially responsible persons of the business entity" after the RO gathers certain facts.  Ibid.

The IRM instructs an RO considering a business IA to gather information necessary "to support a possible [TFRP] assessment in the event the agreement is defaulted."  IRM pt. 1.2.14.1.3 (June 9, 2003).  Specifically, the RO is instructed to "[a]ssemble all documentation for completion of * * * [a TFRP] to the point of proposing assessment;" to "[c]omplete interviews for all potentially responsible persons * * * to determine responsibility and willfulness;" and to "[c]onduct financial analysis to determine whether the penalty, if assessed would be collectible."  IRM pt. 5.14.7.4.1(7) (Mar. 11, 2011).

[*13] As the SO noted in his case activity record, the RO had requested information from petitioner to address these matters. The RO had set a deadline of March 12, 2015, for scheduling an interview during which these matters would be discussed. But petitioner failed to supply the required information by that date, so no interview was ever scheduled or held. In these circumstances, the SO concluded that the TFRPs were assessed appropriately because petitioner had failed to supply the necessary information and "[i]n essence * * * was not fully cooperative."

The IRM provisions on which petitioner relies supply "procedural guidance for initiating a business taxpayer, trust fund-related installment agreement." Kirkpatrick v. Commissioner, T.C. Memo. 2014-234, 108 T.C.M. (CCH) 541, 543. Petitioner contends that these provisions should be read to create an absolute prohibition against assertion of TFRPs against responsible persons, so long as the related business entity has an IA in place and is current on its obligations. But the IRM expresses no ironclad rule directing suspension of collection; it requires taxpayers seeking to avoid TFRPs to provide information and to attend an interview, which petitioner did not do. In any event, these IRM provisions are directed to the initial acceptance of IAs. They "do[] not address suspension of collection after assessment with respect to an already established installment agreement."

**[\*14]** <u>Ibid.</u> (rejecting an argument substantially identical to that which petitioner advances here).

The IRM clearly indicates that NFTLs may be filed against responsible persons in this setting, stating that, if TFRPs are assessed, "lien determinations should be made and, if appropriate, liens should be filed." IRM pt. 5.14.7.4.1(8); see <u>id.</u> pt. 5.14.7.4.1(11) ("If the TFRP assessment has been made, make lien determinations on these accounts."). After examining the relevant IRM provisions, the SO concluded that the TFRPs had been asserted appropriately and that "the filing of the NFTL was in accordance with current procedures."

This Court does not conduct an independent review and substitute its judgment for that of the SO. See <u>Murphy</u>, 125 T.C. at 320. "Rather, if the settlement officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities." <u>Estes v. Commissioner</u>, T.C. Memo. 2014-9, 107 T.C.M. (CCH) 1053, 1055, <u>aff'd</u>, 577 F. App'x 205 (4th Cir. 2014). We conclude that the SO properly sustained the NFTL filing against petitioner.[2]

---

[2]Petitioner asserts that RO Perez, who is shown as the IRS contact person on the Letter 3172, told her representative that an NFTL would not be filed if she met certain conditions. There is no reference to such a communication in RO Perez's case activity record, which consistently recites the need to file an NFTL to protect

(continued...)

[*15] Section 6330(c)(1) and (3)(A) required the SO to verify that all applicable legal and administrative requirements had been met. One such requirement is that imposed by section 6751(b)(1). It provides: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." Respondent contends that section 6751(b)(1) does not apply to TFRPs at all. Alternatively, he contends that the record establishes IRS compliance with section 6751(b)(1) with respect to the TFRPs in question here.

In Blackburn v. Commissioner, 150 T.C. __ (Apr. 5, 2018), the IRS argued similarly that section 6751(b) does not apply to TFRPs. We found no need to decide that question because the record included a Form 4183 reflecting supervisory approval of the TFRPs in question. We determined that the Form 4183 was sufficient to enable the SO to verify that the requirements of section 6751(b)(1) had been met with respect to the TFRPs, assuming the IRS had to meet those requirements.

---

²(...continued)
the Government's interest. The SO properly made his determination on the basis of documents in the administrative file.

**[\*16]** As in <u>Blackburn</u>, we need not decide whether section 6751(b)(1) applies to TFRPs. Here, respondent submitted a Form 4183 showing that the TFRPs assessed against petitioner had been approved in writing by Group Manager Renard, the immediate supervisor of RO Kacic. We thus find there to be a sufficient record of supervisory approval of the TFRPs in question.

Finally, petitioner contends that the SO failed to confirm that copies of the Letter 3172 and the notice of determination were mailed to the proper person. The IRS mailed both notices to petitioner personally. Section 6304, captioned "Fair Tax Collection Practices," provides that the Secretary generally "may not communicate with a taxpayer in connection with the collection of any unpaid tax" if the Secretary "knows the taxpayer is represented by any person authorized to practice" before the IRS and "has knowledge of, or can readily ascertain, such person's name and address." Sec. 6304(a)(2). In this case, petitioner's original representative had filed Form 2848, Power of Attorney and Declaration of Representative, on June 22, 2016, several weeks before the IRS issued the Letter 3172 notifying petitioner of the NFTL and informing her of her right to a CDP hearing.

This argument is unpersuasive for several reasons. Congress enacted section 6304(a) to prevent abusive tax collection practices, e.g., communicating with a taxpayer "at any unusual time or place" or engaging in conduct "the natural con-

**[*17]** sequence of which is to harass, oppress, or abuse any person." Sec.

6304(a)(1), (b). There is no authority for the proposition that section 6304(a)(2)

bars the IRS from mailing, to a taxpayer personally, notices that the Code explicit-

ly requires to be mailed to the taxpayer. See sec. 6672(b) (providing that "no

penalty shall be imposed * * * unless the Secretary notifies the taxpayer" of pro-

posed TFRP assessment); secs. 6320(a)(1), 6321 (providing that IRS must provide

notice of NFTL filing to the "person liable to pay * * * [the] tax"). The IRS

properly sent the Letter 1153 and the Letter 3172 to petitioner personally.

Second, there is no authority for the proposition that checking compliance

with section 6304 is part of an SO's verification responsibilities under section

6330(c)(1). Congress created a civil action by which taxpayers can recover dam-

ages from IRS officers who knowingly violate section 6304. See sec. 7433 (cross-

referenced by section 6304(c)); Hunter v. Commissioner, No 09 Civ 4268 (JSR)

GWG), 2010 WL 2605715, at *6 (S.D.N.Y. June 29, 2010). There is no

suggestion in the Code or regulations that behavior that might give rise to a cause

of action under section 7433 can serve as a basis for setting aside otherwise

permissible collection action. See Currier v. Commissioner, T.C. Memo.

2011-113, 101 T.C.M. (CCH) 1548, 1549 n.2 (rejecting for lack of jurisdiction in

a CDP case a section 7433 claim that the IRS violated section 6304 "when

**[*18]** respondent knew that petitioner was represented by counsel but called petitioner directly").

In reality, petitioner's complaint is not that the IRS mailed the Letter 3172 and the notice of determination to her, but that it failed to send copies of these notices to her representatives. But section 6304(a) does not address that topic. And any error in failing to copy petitioner's representatives was clearly harmless. See Perkins v. Commissioner, 129 T.C. 58, 71 (2007) (declining to remand for supplemental CDP hearing where any error that occurred during original hearing was harmless). Petitioner immediately supplied copies of these notices to her representatives; they timely requested a CDP hearing; they fully participated in that hearing; and they timely petitioned this Court for review of the IRS' notice of determination.[3]

In sum, our review of the record establishes that the SO properly discharged all of his responsibilities under section 6330(c). Petitioner did not propose any

---

[3]Petitioner asserts that her "right to be informed" and her "right to privacy," which are among the taxpayer rights that section 7803(a)(3) generally directs the Commissioner to protect, were violated during the CDP hearing. She did not raise these arguments during the CDP hearing or in her petition, and we accordingly deem them waived. See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); Triola v. Commissioner, T.C. Memo. 2014-166, 108 T.C.M. (CCH) 185, 187; Dinino v. Commissioner, T.C. Memo. 2009-284, 98 T.C.M. (CCH) 559, 565-566.

[*19] collection alternative or submit any supporting financial information. We have consistently held that it is not an abuse of discretion for an Appeals officer to reject collection alternatives and sustain collection action where the taxpayer has failed, after being given sufficient opportunities, to supply the required forms and supporting financial information. See Huntress v. Commissioner, T.C. Memo. 2009-161, 98 T.C.M. (CCH) 8, 10-11; Prater v. Commissioner, T.C. Memo. 2007-241, 94 T.C.M. (CCH) 209, 210. We will thus sustain the collection action.

To reflect the foregoing,

An appropriate order and decision will be entered for respondent.